## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

**RENATA MARIE DAGGS**                    **CASE NO. 3:20-CV-00440**

**VERSUS**                                **JUDGE TERRY A. DOUGHTY**

**OCHSNER L. S. U. HEALTH SYSTEM**        **MAG. JUDGE KAREN L. HAYES**
**OF NORTH LOUISIANA**

### REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, is a motion to dismiss for failure to state a claim upon which relief can be granted, or in the alternative, for more definite statement [doc. # 5] filed by defendant Ochsner LSU Health System of North Louisiana. The motion is opposed. For reasons assigned below, it is recommended that the motion be GRANTED-IN-PART and DENIED-IN-PART.

### Background

On April 7, 2020, plaintiff pro se Renata Daggs filed the instant complaint against her former employer, Ochsner LSU Health Systems of North Louisiana ("OLHS-NL"). In her omnibus 50-page long complaint, plaintiff catalogued a series of wrongs that apparently began in 2015 when she made anonymous complaints regarding inadequate medical care that her employer was providing to psychiatric patients, which eventually culminated with an on-the-job eye injury following a patient assault in November 2018, her termination from employment in February 2019, and the suspension of her nursing license in March 2019, which was upheld in November 2019 following a July 2019 hearing.[1]

---

[1] In her complaint, plaintiff listed one defendant, OLHS-NL, plus eight additional "participants": the State of Louisiana; LUBA Mutual Holding Company ("LUBA"), OLHS-NL's workers'

Given the breadth and scope of plaintiff's 50-page complaint, it is somewhat challenging to distill the precise nature of all her claims. However, from what the court may discern, plaintiff has endeavored to assert claims against OLHS-NL via the following statutory provisions or theories of recovery: 42 U.S.C. §§ 1981 and 1983 (including for violations of OSHA); Titles VI and VII of the Civil Rights Act of 1964; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq.*; Titles I and II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; the Rehabilitation Act of 1973; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968; violations of various federal and state criminal laws; the Louisiana Employment Discrimination Law ("LEDL") La. R.S. § 23:301, *et seq.*; the Louisiana whistleblower statute, La. R.S. § 23:967; penalties for retaliatory discharge and/or discrimination following the filing of a workers' compensation claim, La. R.S. § 23:1361; possible state law tort claims for fraud, intentional infliction of emotional distress, and/or medical malpractice; plus, allegations of conspiracy. Plaintiff seeks "punitive damages, general damages, and compensatory damages in the amount of $250,000 to settle out of court."

On July 29, 2020, defendant OLHS-NL filed the instant motion to dismiss for failure to

---

compensation insurer; Jane Reeves, the court reporter for plaintiff's April 16, 2019, deposition; Walter Salley, LUBA's attorney; Gregory Unger, plaintiff's former workers' compensation attorney; Marion Lynn Ansardi, the executive director of the Louisiana State Board of Practical Nursing Examiners ("LSBPNE"); Patty Saucier, a compliance investigator for the LSBPNE; and Dustin Flint another one of plaintiff's former workers' compensation attorneys.

The Clerk of Court did not docket these additional "participants" as defendants, and thus, did not issue summonses for them. If it was plaintiff's intention to name the "participants" as defendants, she did not so correct the Clerk of Court, or otherwise file a motion for leave to amend her complaint to redress the matter. Furthermore, in the absence of service, these would-be parties are subject to dismissal for failure to perfect timely service. *See* Fed.R.Civ.P. 4(m). Accordingly, at this point, the only recognized defendant in the case remains plaintiff's former employer, OLHS-NL.

state a claim upon which relief can be granted, or in the alternative, for more definite statement. In its motion, OLHS-NL asserted that plaintiff's complaint failed to comply with Rule 8 of the Federal Rules of Civil Procedure because it was vague, ambiguous, and did not include a short and plain statement of her claim showing that plaintiff was entitled to relief. OLHS-NL decried the complaint as long-winded and incoherent, and emphasized that it was unable to discern what claims plaintiff was asserting, or against whom.

Despite these misgivings, OLHS-NL proceeded to address the viability and sufficiency of some of plaintiff's claims. For instance, OLHS-NL argued that plaintiff's citation to criminal statutes was ineffectual because criminal statutes do not support imposition of civil liability. Similarly, defendant asserted that the Occupational Safety and Health Act ("OSHA") did not provide a private right of action. OLHS-NL further observed that it was not obliged to provide plaintiff with any benefits under a federally assisted program, and thus, it could not have denied any benefits to plaintiff or otherwise discriminated against her on that basis. OLHS-NL also suggested that it was not a person acting under color of state law, and consequently, it could not be subject to liability under 42 U.S.C. § 1983. Moreover, defendant observed that plaintiff could not pursue a claim for legal malpractice against OLHS-NL because it never provided any legal services to plaintiff.

With regard to plaintiff's employment-related claims, OLHS-NL argued that it did not violate the FMLA because plaintiff exhausted all twelve weeks of leave that she was entitled to receive under the law. As to her claims under Title VII and § 1983, OLHS-NL asserted that plaintiff never alleged that OLHS-NL took an adverse employment action against her because of her race. In addition, OLHS-NL argued that there were no allegations that plaintiff suffered

3

from a disability or that she suffered an adverse employment action because of her disability as required to support an ADA claim.

In the event that the court declined to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted, OLHS-NL urged the court to order plaintiff to amend her complaint to provide a more definite statement. OLHS-NL reasoned that plaintiff's complaint was so vague and ambiguous that it could not possibly be expected to prepare and file a responsive pleading.

On August 20, 2020, plaintiff transmitted a Microsoft Word copy of her opposition brief to the undersigned's email address for courtesy copies, but neglected to file the actual opposition brief with the Clerk of Court. The court brought this issue to plaintiff's attention and gave her until September 4, 2020, in which to *file* her opposition brief with the Clerk of Court. (Aug. 25, 2020, Order [doc. # 8]).

On September 22, 2020, plaintiff filed her opposition brief with the Clerk, in belated compliance with the court's order. (Pl. Opp. Memo. [doc. # 9]). In her brief, she explained that she asserted claims against OLHS-NL for violations of the ADA, the FMLA, Titles VI and VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1983. She further argued that she did not need to satisfy a prima facie case for employment discrimination at the pleading stage. She also took issue with defendant's characterization of her complaint as fatally flawed because it purportedly lacked requisite facts and clarity. While acknowledging that the format of her complaint was a bit confusing, plaintiff noted that defendant managed to isolate and address multiple causes of action set forth in her complaint. She also added that defendant conspired with others, and that she had asserted a claim for fraud. Plaintiff then proceeded to discuss the viability of her various

4

claims. However, she did not oppose providing defendant with a more definite statement.
Plaintiff concluded by observing that she should not be required to provide evidence of her
claims at the pleading stage. Rather, she intended to provide additional details after discovery
and after defendant filed its formal answer to the complaint.

On September 29, 2020, OLHS-NL filed its reply brief, and argued that the court should
not consider plaintiff's opposition memorandum because it was untimely.[2] (Def. Reply [doc. #
10]). Defendant argued that, even if the court considered the memorandum, plaintiff's
complaint, as clarified by her brief, still remained deficient. OLHS-NL emphasized that, given
the continued lack of clarity regarding plaintiff's claims, it would suffer extreme prejudice if the
court were to permit plaintiff to proceed with this litigation. OLHS-NL reargued that plaintiff
had not sufficiently pleaded that OLHS-NL was a state actor or that its employees were acting
under color state law. Furthermore, even if she had so alleged, plaintiff's § 1983 claim was
untimely. Defendant also asserted that the FLMA did not insulate plaintiff from termination
simply because she requested medical leave or was placed on medical leave. Defendant
concluded by urging the court to require plaintiff to amend her complaint – in the event the court
declined to dismiss it outright.

On December 23, 2020, plaintiff again transmitted to the undersigned's courtesy copies
email address several documents, including: a motion for leave to file first amended complaint,
an apparent proposed amended complaint that was divided into at least two documents, a table of

---

[2] OLHS-NL complained that instead of filing the brief that she had emailed to the court
previously, the brief that plaintiff actually filed with the Clerk of Court was different and twice
as long as the original. In light of plaintiff's pro se status, the court will consider her brief.

authorities for fraud on the court, a letter from the Civil Rights Division of the U.S. Department of Justice, and certain deposition excerpts.  The court again advised plaintiff that she needed to file these documents by delivering them to the Clerk of Court.  (Dec. 30, 2020, Order [doc. # 11]).  The court accorded plaintiff until January 11, 2021, in which to file the documents and cautioned that it would not consider the "submissions," if she failed to timely do so.  *Id.*

Plaintiff did not file her submissions with the Clerk of Court.  Thus, the matter is ripe.[3]

## **Rule 12(b)(6) Motion**

### I.    **Standard of Review**

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."  Fed.R.Civ.P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in

---

[3]  On January 29, 2021, plaintiff sent an email to the undersigned's courtesy email address wherein she advised that on February 1, 2021, she intended to file a motion to recuse the judges assigned to this case.  She added that she also would be filing a complaint with the Department of Justice and the Louisiana Supreme Court.  However, there is no indication that plaintiff ever followed through with these plans.

between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly.*

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989). Furthermore, "a complaint may be dismissed if it clearly lacks merit—for example, where there is an absence of law to support a claim of the sort made." *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir. 2020) (citations and internal quotation marks omitted).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal

argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958).

In the context of employment discrimination claims, "the ordinary rules for assessing the sufficiency of a complaint apply," and a plaintiff need not establish a prima facie case of employment discrimination in her complaint. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S.Ct. 992, 997 (2002). However, while plaintiff is not obliged to submit evidence to establish a prima facie case of discrimination at the pleading stage, she must plead facts as to all of the elements of her discrimination claim sufficient to render the claim plausible. *Chim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir.2016) (citations omitted). Accordingly, it can prove "helpful to reference the *McDonnell Douglas* framework," upon which plaintiff ultimately must rely if, as suggested here, her claim is based upon circumstantial evidence. *Id.*; *see* discussion, *infra*.

Rule 9(b) requires that circumstances constituting fraud or mistake be alleged with particularity. Fed.R.Civ.P. 9(b). The particularity demanded by Rule 9(b) supplements Rule 8(a)'s pleading requirement. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Allegations of fraud under Louisiana law asserted in federal court implicate the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986); *Conerly Corp. v. Regions Bank*, 2008 WL 4975080

8

(E.D. La. Nov. 20, 2008). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). What constitutes sufficient particularity for Rule 9(b) varies with the facts of each case. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992). At minimum, however, Rule 9(b) requires a plaintiff pleading fraud to "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 564-565 (5th Cir. 2002) (quoted sources and internal quotation marks omitted). Nonetheless, the "'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)." *Grubbs*, 565 F.3d at 190.

Finally, when considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

## II.    Factual Summary

For five years, between February 2014 and February 6, 2019, plaintiff Renata Daggs was employed by defendant, OLHS-NL, or its predecessor(s), as a licensed practical nurse on an

acute inpatient psychiatric unit (hereinafter, the "Psych Unit") at E.A. Conway Medical Center, Monroe, Louisiana.[4]

In 2016, a "psychiatric supervisor" told the Psych Unit staff that they needed to increase the amount of Haldol, Ativan, Benadryl ("HAB") injections that were administered to patients. The nurses refused to comply with these instructions because it violated the patients' rights. Subsequently, the chief psychiatrist removed Ativan from the series of injections, which was the only effective medication in the HAB cocktail for controlling immediate violent situations.

Also because of the need to keep patients silent during "doctor's call," there was a substantial amount of patient-on-patient and patient-on-staff assaults, which caused more HAB injections to be administered to patients. Furthermore, "Crisis Prevention Institute training" required maintenance of adequate staff to ensure safety. However, during plaintiff's five years of employment with OLHS-NL, only African-American workers were "floated" from their departments to the Psych Unit. Also, according to plaintiff, 95 percent of assaults were against African-Americans. Nonetheless, between November 14-19, 2018, three Caucasian staff and one Caucasian patient were hit. Less than one-week later, a physician restarted administration of Ativan to the patients.[5]

On November 9, 2018, a female patient at the Psych Unit spit at and attacked Daggs as

---

[4] According to plaintiff, OLHS-NL is a non-profit, private-public organization.

[5] Plaintiff further identified a list of changes in workplace procedures that she believed presented risks to patients and/or staff. Consequently, between January 2015 and November 2018, Daggs initiated several anonymous complaints to "Patient Advocate," OSHA, and the Louisiana Department of Health & Hospitals regarding inadequate medical care provided to psychiatric patients.

she walked out of the nurses' station.   A male staff member had to perform a takedown to end the attack.  The next day, on November 10, 2018, the same patient attacked Daggs again after Daggs and another staff had escorted the patient to her room because of her increasingly aggressive and destructive behavior.  About fifteen minutes after this second attack, the same patient walked briskly towards Daggs with her fist balled up, while threatening and cursing at plaintiff.  Daggs used the "least restricted [sic] form of restraint," to defuse the attack. Nonetheless, the patient hit, scratched, choked and jabbed her "stiletto acrylic nails" into Daggs' right eye.[6]

The "House Supervisor" escorted Daggs to the emergency department and to the laboratory for drug screening.[7]  In the emergency department, plaintiff was seen by Michael Austin, a physician's assistant, who diagnosed plaintiff with forced trauma to the right eye, including an abrasion to the right eye cornea, and a one millimeter defect to the opposite side of the right eye cornea, which was consistent with a puncture wound.  Austin scheduled plaintiff for a November 13, 2018, appointment at the medical center's eye clinic.[8]

---

[6] According to plaintiff, one week after her last attack, the same patient that attacked her beat another nurse unconscious and fractured her jaw.  OLHS-NL then bullied the nurse into not pressing charges against the patient, but after the nurse insisted, OLHS-NL relented, and a complaint was initiated with on-site security.  The nurse then was pressured into returning to work within three days.  Three days after that, the patient that had attacked both Daggs and the other nurse was discharged to home, rather than into police custody.

[7] Lab results were negative for chemical substances.

[8] After receiving Austin's notes from LUBA in December 2018, plaintiff discovered multiple recreated documents, and the omission of prescribed medications that were very toxic and illegally dispensed.  She also disputed the veracity of Austin's clinical findings, which documented an otherwise normal eye.

On November 13, 2018, Daggs attended her scheduled appointment at the eye clinic, where she was seen by an ophthalmology *resident*, Dr. Aschenbeck (as opposed to a full-fledged ophthalmologist).  Daggs disputed Dr. Aschenbeck's findings.  For example, Aschenbeck documented "the healing stage" of plaintiff's eye without performing the proper examinations required to make that statement.  Aschenbeck also indicated that Daggs' vision had improved, when, in fact, her vision had declined from 20/50 to 20/400 in less than 72 hours.  Aschenbeck violated plaintiff's rights, and committed a medical battery by using Tonopen, which was contraindicated for the type of injury that plaintiff suffered.  She further ordered plaintiff to continue using all medications prescribed previously, including a very toxic eye anesthetic.  Aschenbeck also declined plaintiff's request for the following weekend off, and declined her request for corrective lenses, without disclosing that she lacked the qualifications to prescribe corrective lenses.  Plaintiff maintains that her rights as a patient were violated.

Over the next two weeks, both Tamieka Saizon, a LUBA claims adjuster and Michael Watson with "OLHM" Risk Management repeatedly changed the treating physician's name on the medical bill from Dr. Aschenbeck to the supervising physician, Dr. Flynn – who never actually examined plaintiff.[9]  With full knowledge that Dr. Flynn never saw Daggs on November 13, 2018, OLHM submitted the bill to LUBA, which paid it.  In other words, OLHS-NL and LUBA began falsifying and altering documents, abusing federally regulated programs, and misrepresenting physicians for the purpose of denying Daggs' workers' compensation claim.

---

[9] Plaintiff filed a small claims suit against Michael Watson for his intentional actions that "aided in some vision loss, financial, and emotional stress through physician misrepresentation and multiple misleading actions . . ."  OLHS-NL hired an attorney, Mr. Lawrence Pettiette to represent Watson.

OLHS-NL also immediately began penalizing plaintiff with leave without pay, unauthorized absences, and denied PTO time – until plaintiff agreed to sign documents relating to PTO usage. OLHS-NL later used these documents in Daggs' workers' compensation case to argue that Daggs had elected to use PTO time, thus rendering her ineligible for workers' compensation payments. Although plaintiff received a doctor's excuse from the emergency department on November 10, 2018, she later learned that there was a second, recreated doctor's excuse that was completely different from the one she had received previously.

According to plaintiff, OLHS-NL and LUBA submitted two injury report documents stating that plaintiff had returned to work – one said that she returned on November 11, 2018, the other said November 16, 2018. Daggs, however, never worked again at OLHS-NL after November 10, 2018.

On November 15 or 16, 2018, plaintiff retained workers' compensation attorney, Dustin Flint,[10] who, together with Todd Watson, advised Daggs to apply for FMLA and workers' compensation for the psychiatric portion of her claim. Plaintiff received approval for FMLA leave, and then on November 20, 2018, was told by Savanah Bagwell, a human resources officer at OLHS-NL, that her workers' compensation case was closed and that she would not be receiving any workers' compensation benefits. Bagwell stated that Daggs' vision loss was not caused by her eye injury and thus, "they" were not responsible for the eyeglasses that "Dr. Barron" had prescribed.[11] Plaintiff further learned that her FMLA would apply only to her

---

[10] Daggs terminated her short-lived attorney-client relationship with Flint less than one-month later on December 13, 2018.

[11] According to Saizon, Watson, and Bagwell, Dr. Barron had characterized plaintiff's November

psychiatric injury, which meant that she had to use her "PTO and ESL." According to plaintiff, every statement that Bagwell made was false.

Daggs asserted that Bagwell and Watson willfully and intentionally used the FMLA leave to mislead her. Plaintiff stated that she informed both her employer, OLHS-NL, and LUBA that she was not mentally prepared to return to work so soon because of the number of attacks that had occurred and the uncertainty of when or if her right eye vision would be fully restored. Furthermore, OLHS-NL never offered her job modification. LUBA also refused to pay for plaintiff's psychiatric treatment, her mileage reimbursement, or her prescription(s).

On November 30, 2018, OLHS-NL notified plaintiff that her FMLA would expire upon the use of 480 FMLA hours. The letter further stated that her workers' compensation claim ended on November 20, 2018, when her doctor released her to work. The letter added, however, that Daggs' physician had indicated that her anticipated return to work date was February 10, 2019. Daggs disputed OLHS-NL's assertion that her workers' compensation claim was closed because a doctor had taken her off of work.

On January 28, 2019, OLHS-NL informed plaintiff, via USPS, that her FMLA coverage had ended and that her leave would end February 10, 2019. OLHS-NL had accommodated the physician's request to remain off of work for a full three months. On February 6, 2019, OLHS-NL terminated plaintiff's employment. According to plaintiff, by law, her FMLA leave did not expire until March 23, 2019.

Attorney Walter Salley represented LUBA and OLHS-NL with regard to plaintiff's

---

19, 2018, office visit as her annual check-up. Plaintiff contends that notes from Dr. Barron's office will show that he was instructed to bill her visit as an annual visit.

workers' compensation claim.  LUBA aided and abetted or knowingly and willfully permitted its employees to use the United States Postal Service to transfer documents that contained falsified and/or altered information regarding plaintiffs' workers' compensation claim.  According to plaintiff, on January 9, 2019, a LUBA employee(s) and another defendant jointly violated her well-established constitutional rights, via a denial letter that was arbitrary and capricious.

On March 8, 2019, plaintiff notified OLHS-NL that she was filing an EEOC complaint for wrongful termination, etc.  On that same day, Marion Ansardi, the executive director of the Louisiana Board of Practical Nursing Examiners ("LSBPNE"), composed a letter to plaintiff advising her that her nursing license was summarily suspended effective March 8, 2019, because of the November 10, 2018, incident.  The letter stated that a video of the incident showed that Daggs had been the aggressor in the physical altercation with the patient.  The letter further explained that Daggs had grabbed the patient by the shoulders and pushed her into the wall, thus creating an altercation that ended up on the floor.  Plaintiff contends that her suspension violated administrative law because she never received a "show cause" hearing prior to the suspension.[12] Furthermore, neither Ms. Ansardi, nor LSBPNE compliance officer, Patty Saucier, ever obtained statements from the witnesses to the incident.

Meanwhile, on, or about March 10, 2019, plaintiff received a call from attorney, Greg Unger, stating that he was willing to represent her.[13]  At some point, Mr. Unger learned that Daggs was involved in "litigation."  He also advised Daggs not to send him information from the

---

[12]  Plaintiff conceded, however, that the letter explained that the Board would schedule her case for the next available formal hearing date.

[13] LUBA's attorney, Walter Salley, asked Mr. Unger to represent Daggs.

"Medical Review Panel," because it had nothing to do with the workers' compensation claim.

On April 16, 2019, LUBA took plaintiff's deposition. Although the deposition purportedly was limited to the workers' compensation case, Mr. Salley asked questions about "the EEOC complaint, the small claims suit against Watson, and the Medical Review Panel." According to Daggs, the court reporter did not correctly transcribe the deposition.

On April 18, 2019, Daggs received a manilla envelope from Unger that contained her case file and a letter stating that he was withdrawing from her case. Daggs contends that Unger's reasons were "false, capricious, arbitrary, and revealing."

Daggs further asserted that Mr. Salley failed to return an interrogatory that had been forwarded to him in violation of an order by a workers' compensation judge. Salley also knowingly and intentionally used the United States Postal Service to transfer documents that contained falsified and/or altered information regarding plaintiff's workers' compensation claim.

Between March 8, and June 21, 2019, Ansardi received evidence (presumably provided by plaintiff) that OLHS-NL's allegations against Daggs were motivated by retaliation. Nonetheless Ansardi and Saucier continued to develop evidence against Daggs going back to her prior employment, and even investigated alleged criminal charges that predated Daggs' nursing career. Daggs disputes the evidence that was admitted at her administrative hearing, which was held before Judge John Becknell.

In November 2019, the LSBPNE revoked Daggs' nursing license and billed her $3,000 for the trouble.

## III.    Invalid or Insufficiently Pled Claims

At the outset, the court observes that under Louisiana law,

16

> the workers' compensation judge shall be vested with original, exclusive jurisdiction over all claims or disputes arising out of [the Workers' Compensation Act] including but not limited to workers' compensation insurance coverage disputes . . . concerning entitlement to workers' compensation benefits, payment for medical treatment, or attorney fees arising out of an injury subject to [the Workers' Compensation Act].

La. R. S. § 23:1310.3(F).

Accordingly, insofar as plaintiff's myriad claims seeks redress for any of the issues encompassed within the workers' compensation scheme, this court lacks jurisdiction to accord relief. *Smith v. Delta Fuel Co., Inc.*, No. 17-1690, 2018 WL 3827481, at *4 (W.D. La. July 20, 2018), *R&R adopted,* 2018 WL 3827335 (W.D. La. Aug. 10, 2018).

To the extent that plaintiff seeks to enforce federal and/or state criminal statutes against defendant, she -- as a private citizen -- is not authorized to do so. *Pierre v. Guidry*, 75 Fed. Appx. 300 (5th Cir.2003) (citations omitted); *Lewis v. Jindal*, 368 Fed. Appx. 613, 614 (5th Cir.2010) ("private citizens do not have a constitutional right to compel criminal prosecution."); *Laird v. Travelers Ins. Co.*, 263 La. 199, 209; 267 So.2d 714, 717 (1972) (violation of a criminal statute in combination with some resultant harm does not, in and of itself, impose civil liability, but instead may be used to identify the applicable standard of care or duty owed for purposes of another claim, e.g., a tort claim).

Plaintiff alternatively might have intended to enforce the criminal violations via a civil RICO claim. "Under the civil RICO statute, [a]ny person injured in his business or property by reason of a violation of section 1962 can sue for treble damages and fees." *Welborn v. Bank of New York Mellon Corp.*, 557 F. App'x 383, 386 (5th Cir. 2014) (citation and internal quotation marks omitted). A civil RICO claim requires proof of three elements: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment,

conduct, or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (citations omitted). Furthermore, "[a] pattern of racketeering activity consists of *two* or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (emphasis added).

Here, however, plaintiff did not set forth facts to show that OLHS-NL engaged in a pattern of continued racketeering activity. Rather, OLHS-NL's actions pertaining to plaintiff's workers' compensation case appear limited to her, and there are no facts to suggest that there is a threat of continued criminal activity under the present circumstances, especially where, as here, plaintiff no longer works at OLHS-NL. *See Bordelon v. Wells Fargo Fin. Louisiana, LLC*, No. 18-2563, 2018 WL 3587690, at *4–5 (E.D. La. July 26, 2018), *reconsideration denied*, 2018 WL 4095121 (E.D. La. Aug. 28, 2018).

Furthermore, as noted by defendant, the Fifth Circuit has recognized that an alleged OSHA violation(s) does not give rise to a private cause of action. *Barrera v. E. I. Du Pont De Nemours & Co., Inc.*, 653 F.2d 915, 920 (5th Cir.1981) (citations omitted). Plaintiff contends that she may enforce OSHA violations via 42 U.S.C. § 1983. However, she has not produced binding authority to support this alternative enforcement mechanism in the context of an OSHA violation. In any event, a § 1983 claim premised upon OSHA violations while plaintiff was employed at OLHS-NL is time-barred. *See* discussion, *infra*.

The court also observes that 42 U.S.C. § 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459–60; 95 S.Ct. 1716, 1720 (1975). Section 1981, however, does not provide a separate cause of action against local government entities. *Oden v. Oktibbeha Cty., Miss.*, 246

F.3d 458, 462 (5th Cir.2001) (citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 731, 109 S.Ct. 2702 (1989)).[14]  Instead, violations of civil rights under § 1981 must be asserted against state actors under § 1983.  *Id*.  However, plaintiff's § 1983 claim is time-barred.  *See* discussion, *infra*.

## IV.    Time-barred Claims

Plaintiff filed the instant suit on April 7, 2020.  However, many of her claims against OLHS-NL are subject to a one-year statute of limitations (or prescriptive period under Louisiana law).  Stated differently, any claim that is subject to a one-year limitations period and that accrued prior to April 7, 2019, is time-barred.

In Louisiana, the prescriptive period is strictly construed against prescription and in favor of the obligation sought to be extinguished.  *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994).  Ordinarily, the burden of proof is on the party pleading prescription.  *Lima v. Schmidt*, 595 So. 2d 624, 628 (La. 1992).  However, when it appears that the claims have prescribed on the face of the complaint, then the plaintiff has the burden of proof to establish facts which would have the effect of interrupting or avoiding prescription.  *Martens v. North*, 1998 WL 378137 (E.D. La. 1998); *Wimberly, supra*.

In Louisiana, delictual actions, including claims for intentional infliction of emotional distress, defamation, medical malpractice, fraud, and the like, are subject to a liberative

---

[14] There is a question as to whether defendant OLHS-NL is a state actor for purposes of § 1983. Plaintiff contends that Ochsner LSU Health of Monroe is a private-public hospital in partnership with the Louisiana State University Medical School.  Clearly, if defendant *is* a state actor, *and* not otherwise subject to Eleventh Amendment sovereign immunity, then it must be some form of local government entity.

prescription period of one year.  La. Civ. Code Art. 3492; La. R.S. § 4628; *Schaefer v. Peralta*, No. 16-17784, 2017 WL 6055153, at *3 (E.D. La. Dec. 7, 2017) (citations omitted); *Robin v. Binion*, 469 F.Supp.2d 375, 389 (W.D. La.2007), *aff'd,* 271 Fed. Appx. 436 (5th Cir.2008) (delictual fraud).  Similarly, plaintiff's claims under the Louisiana whistleblower statute, La. R.S. § 23:967, and for penalties for retaliatory discharge and/or discrimination following the filing of a workers' compensation claim, La. R.S. § 23:1361, also are subject to a one-year prescriptive period.[15]  *Williams v. Otis Elevator Co.*, 557 Fed. Appx. 299, 301 (5th Cir.2014) (whistleblower statute);[16] *Maquar v. Transit Mgmt. of Se. Louisiana, Inc.*, 593 So.2d 365, 368 (La.1992) (retaliatory conduct for filing workers' compensation claim).[17]  The prescriptive period begins to run from the day injury or damage is sustained.  *Nolan v. Jefferson Par. Hosp. Serv. Dist. No. 2*, 790 So.2d 725, 730 (La. App. 5th Cir. 2001) (citation omitted).[18]

Some of plaintiff's federal law theories of recovery also incorporate Louisiana's one-year

---

[15] Although plaintiff's claim(s) under the LEDL also is subject to a one-year prescriptive period, the period may be suspended during the pendency of an investigation by the Equal Employment Opportunity Commission ("EEOC").  *See Bradford v. Jackson Par. Police Jury*, No. 18-1376, 2019 WL 3311380, at *3 (W.D. La. July 23, 2019).  Plaintiff attached to her complaint letters from the EEOC, which suggest that there was an investigation by the EEOC.  Accordingly, the court cannot find that plaintiff's LEDL claims are time-barred.

[16] There is no tolling provision for a whistleblower claim during the pendency of an administrative investigation.  *Williams, supra* (citations omitted).

[17] The filing of a workers' compensation claim can interrupt prescription on a retaliatory discharge action – if the workers' compensation claim included a claim for retaliatory discharge.  *See Maquar, supra*.  There are no such allegations here, however.

[18]  Damages ordinarily are sustained from the date injury is inflicted, so long as the injury is apparent to the victim, even though the extent of damages remains indeterminate.  *Collinson v. Tarver Land Dev., LLC*, No. 11-1787, 2012 WL 688551, at *1 (W.D. La. Feb. 1, 2012), *R&R adopted*, 2012 WL 692193 (W.D. La. Mar. 2, 2012).

prescriptive period.  For example, there is no federal statute of limitations for actions brought

pursuant to 42 U.S.C. § 1983.  *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir.1992).  Therefore,

§ 1983 borrows the forum state's general personal injury limitations period.  *Mejia v. Unknown*

*Officers*, 168 F.3d 485 (5th Cir.1999) (citing *Owens v. Okure,* 488 U.S. 235, 243-48 (1989)) (§

1983).[19]  In Louisiana, delictual actions are subject to a liberative prescription period of one year.

*See* discussion, *supra*.  Thus, "[i]n Louisiana, the applicable section 1983 limitation is one year."

*Mejia, supra*  (citing *inter alia*, Louisiana Civ. Code Ann. art. 3492).[20]

Furthermore, Title VI claims are treated like 42 U.S.C. § 1983 for limitations purposes.

*Price v. Hous. Auth. of New Orleans*, No. 01-3016, 2003 WL 22038409, at *2 (E.D. La. Aug. 27,

2003); *see also Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1521 (5th Cir.1993).  Also, because

neither Title II of the ADA, nor the Rehabilitation Act specify a statute of limitations, the court

must employ the forum state's limitations period for personal injuries.  *See Holmes v. Texas*

*A&M Univ.*, 145 F.3d 681, 684 (5th Cir.1998); *Joseph v. Port of New Orleans*, No. 99-1622,

2002 WL 342424, at *12 (E.D. La. Mar. 4, 2002), *aff'd sub nom. Joseph v. Bd. of Comm'rs of the*

---

[19] Courts must borrow the forum state's limitations period for personal injuries, including the state's provisions on tolling – so long as application of the rules does not undermine the goals of the federal statute at issue.  *Jackson, supra* (citations omitted); *Hardin v. Straub*, 490 U.S. 536, 539, 109 S.Ct. 1998, 2000 (1989) (citation omitted).

[20] Although state law governs the limitations period and tolling exceptions, federal law determines when a cause of action arises.  *Jackson, supra* (citation omitted).  "A cause of action under § 1983 accrues when the aggrieved party knows, or has reason to know of, the injury or damages which form the basis of the action."  *Ramon v. Rodriguez-Mendoza*, 372 Fed. Appx. 494 (5th Cir. April 1, 2010) (citing *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir.1995)).  Accordingly, "if the plaintiff knows of the injury and the connection between the injury and the defendant's actions, or if the circumstances would lead a reasonable person to investigate the matter further, then the cause of action has accrued."  *Mejia v. Unknown Officers*, 168 F.3d 485 (5th Cir.1999).

*Port of New Orleans*, 55 Fed. Appx. 717 (5th Cir.2002) (applying Louisiana's one-year prescriptive period for torts to an ADA Title II claim).

Here, most of plaintiff's allegations against OLHS-NL center upon incidents that occurred in November-December 2018, or earlier. Plaintiff also complained about her discharge from employment in February 2019 and OLHS-NL's possible disclosure of information to the LSNBE in March 2019.[21] Again, however, those incidents occurred more than one-year before she filed in April 2020. In short, insofar as plaintiff purports to advance theories of recovery against OLHS-NL that are subject to one a year statute of limitation or prescriptive period, it is manifest that those claims are time-barred.

## V.    Sufficiently Pled and Viable Claims

As an initial matter, where, as here, plaintiff's complaint did not include facts to show direct evidence of discrimination, she may produce circumstantial evidence of discrimination via the burden-shifting analysis detailed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir.2019) (citations omitted). This applies to each of the claims discussed below.

a)    ADA/LEDL Discrimination Claim

It appears that plaintiff attempted to assert a Title I ADA claim against her former

---

[21] Insofar as plaintiff contends that OLHS-NL conspired with others to deprive her of unspecified rights under § 1983, she must allege facts that suggest: "1) an agreement between the private and public defendants to commit an illegal act, and 2) an actual deprivation of constitutional rights." *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir.1994) (internal citations omitted). Here, aside from conclusory allegations, plaintiff did not adduce facts to support a finding that OLHS-NL had an actual "agreement" for a nefarious purpose with anyone. "Bald allegations that a conspiracy existed are insufficient." *Nall v. Stringer*, 4 F.3d 989 (5th Cir.1993) (citations omitted).

employer.  The ADA prohibits a covered employer from discriminating against a qualified individual "on the basis of disability" regarding the "terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  There are two types of ADA discrimination claims that are potentially relevant here:  "(1) an employer's 'adverse employment action' against an employee because of h[er] disability and (2) an employer's failure to 'reasonably accommodate' an employee's disability."  *Callais v. United Rentals N. Am., Inc.*, No. 17-312, 2019 WL 2169182, at *4 (M.D. La. May 17, 2019).[22]

To establish a prima facie case of disability discrimination, plaintiff must show that:  "(1) [s]he has a disability or was regarded as disabled; (2) [s]he was qualified for the job; and (3) [s]he was subject to an adverse employment decision because of h[er] disability.  *Nall, supra* (citations omitted).

Here, plaintiff alleged that she had a mental impairment – potentially a form of post-traumatic stress disorder, stemming from the work-related assault that she experienced.[23]  She also alleged a decrease in visual acuity.  Furthermore, OLHS-NL granted FMLA leave to plaintiff, which suggests that it believed that she had an adequate medical reason for the leave.  Moreover, OLHS-NL discharged plaintiff from employment when her FMLA leave expired, which, in the absence of any reasonable explanation for the adverse job action, leads to the

---

[22] The same analysis applies to plaintiff's claims under both the ADA and the LEDL.  *Callais, supra* (citing *inter alia*, *Baker v. FedEx Ground Package Sys., Inc.*, 278 F. App'x 322, 327 (5th Cir. 2008)).  Louisiana courts apply federal jurisprudence to assess discrimination claims under the LEDL.  *Labit v. Akzo-Nobel Salt, Inc.*, 209 F.3d 719, 719, n.1 (5th Cir. 2000); *see also Conine ex rel. Estate of Addie v. Universal Oil Products Co.*, 966 So. 2d 763, 767 (La. App. 2d Cir. 2007).

[23] PTSD "substantially limits" major life activities and thus qualifies as a disability under the ADA.  *Callais, supra* (citation omitted).

reasonable inference that she suffered an adverse employment decision because of her disability. Therefore, the issue becomes whether plaintiff was qualified for the job, which also dovetails into her failure to accommodate claim.

A plaintiff can show that she is "qualified" for the job by demonstrating that "either (1) [she] could perform the essential functions of the job in spite of [her] disability," or "(2) that a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job." *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417–18 (5th Cir.2017) (citation and quoted source omitted). Further, "[t]ime off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee with indefinite leave." *Id*.

Relatedly, "[u]nder the ADA, it is unlawful for an employer to fail to accommodate the known limitations of an employee's disability." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir.2020), *cert. denied sub nom. Clark v. Inco Champion Nat'l Sec., Inc.*, No. 20-199, 2020 WL 6385801 (Nov. 2, 2020) (citations omitted). A failure-to-accommodate claim requires plaintiff to prove the following statutory elements: "(1) [she] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Clark, supra* (citations omitted). Plaintiff also must show that *she* requested a reasonable accommodation. *Clark, supra*.

Here, the complaint plausibly suggests that OLHS-NL was aware of plaintiff's alleged disability because it approved her FMLA leave – at least for a period of time. Furthermore, plaintiff requested FMLA leave, and contends that she should have received more. In other words, plaintiff's reasonable accommodation was additional time off. Where, as alleged here,

24

plaintiff had additional FMLA leave available, it is plausible that OLHS-NL could have reasonably accommodated her alleged disability by according her the additional time off that she purportedly was entitled to receive.  *See* discussion, *infra*.  This plausible reasonable accommodation that OLHS-NL declined to extend suffices to support plaintiff's ADA claims at the pleading stage.  *See* discussion, *infra*.

> b)   <u>FMLA Interference and Retaliation</u>

Among its various entitlements, the FMLA accords an eligible employee the right to twelve workweeks of leave within a twelve-month period because of a serious health condition that makes the employee unable to perform the functions of her position."  29 U.S.C. § 2612(a)(1)(D).  An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA.  29 U.S.C. § 2615(a)(1).  Further, to establish a prima facie case of interference, plaintiff must provide support for the following elements:

> (1) she was an eligible employee, (2) her employer was subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, (5) her employer interfered with, restrained, or denied her the benefits to which she was entitled under the FMLA, and (6) she was prejudiced thereby.

*Roberson v. Iberia Comprehensive Cmty. Health Ctr., Inc.*, 19-0067, 2020 WL 1930467, at *13 (W.D. La. Apr. 21, 2020), *appeal dismissed,* 20-30330, 2020 WL 6777550 (5th Cir. July 27, 2020).[24]

In this case, plaintiff received FMLA leave for a period of time, which plausibly shows that she was an eligible employee, that her employer was subject to FMLA's requirements, and that she gave notice that she required FMLA leave.  Of course, OLHS-

---

[24] Also, an employer's failure to comply with the notice requirements mandated by the FMLA, and its associated regulations, may constitute an interference with, restraint, or denial of an employee's FMLA rights.  29 C.F.R. § 825.300(e).

NL contends that plaintiff used up all twelve weeks of her FMLA leave, whereupon it discharged her.

Plaintiff, however, argues that OLHS-NL notified her that she was entitled to 480 hours of FMLA time off, which began on November 10, 2018. She further stated that she and other nurses in the department were scheduled to work 36 hours per week. Consequently, she was entitled to 13.33 weeks off (480 hours/36 hours), which would have lapsed no earlier than February 11-12, 2019. According to plaintiff, however, she was discharged on six-days earlier on February 6.

Plaintiff further argues that OLHS-NL advised her that if she needed to extend her FMLA time beyond February 10, 2019, then she would need to so notify OLHS-NL. By this letter, plaintiff infers that there was additional FMLA leave available such that OLHS-NL must have used the calendar year method for determining her leave entitlement, which would mean that she had twelve more weeks of leave available at the beginning of 2019. *See* 29 C.F.R. § 825.200.

Under either theory, plaintiff plausibly alleged that she was entitled to additional FMLA leave that she did not receive, which resulted in her premature discharge from employment. Accordingly, plaintiff's complaint states a plausible claim for interference with FMLA rights.

Plaintiff's complaint also supports a prima facie case of FMLA retaliation, which requires a showing that "(1) the employee was protected under the FMLA; (2) the employee suffered an adverse employment decision; and (3) the employee was either treated less favorably than an employee who had not requested leave or the employer made the adverse employment

26

decision because the employee took FMLA leave.  *Hunt v. Rapides Healthcare Sys., LLC*, 277

F.3d 757, 768 (5th Cir.2001), *abrogated on other grounds by Burlington Northern & Santa Fe*

*Railway v. White,* 548 U.S. 53, 126 S.Ct. 2405 (2006).  Here, plaintiff was protected under the

FMLA, and suffered an adverse employment decision, termination, after she utilized her FMLA

leave.[25]  Moreover, the temporal proximity between plaintiff's FMLA leave and the adverse

employment action suffices to establish the requisite causal link:  "[w]hen evaluating whether the

adverse employment action was causally related to the FMLA protection, the court shall consider

the 'temporal proximity' between the [FMLA-protected activity] and the termination."  *Mauder*,

446 F.3d at 583 (citation omitted).  The Fifth Circuit has held that "[c]lose timing between an

employee's protected activity and an adverse action against [her] may provide the 'causal

connection' required to make out a *prima facie* case of retaliation."  *Swanson v. Gen. Serv.*

*Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (citation omitted).

    Here, OLHS-NL discharged Daggs only nine days after having advised her that her

FMLA leave would expire.[26]  The Fifth Circuit has held that a time period of five-days between

an employee's protected activity and her termination was sufficient on its own to establish the

causal connection element of plaintiff's  prima facie retaliation claim.  *Evans v. City of Houston*,

---

[25]  In *Hunt*, the court remarked that "[t]he FMLA's protection against retaliation is not limited to
periods in which an employee is on FMLA leave, but encompasses the employer's conduct both
during and after the employee's FMLA leave."  *Hunt*, 277 F.3d at 768-69; *but see Mauder v.*
*Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006) (plaintiff must
show that she sought to return to work before expiration of FMLA leave).
    To the extent that *Hunt* and *Mauder* remain in tension, and in the absence of any
intervening decision by the Supreme Court or change in the law, this court must give effect to the
earlier decision.  *See Ryals v. Estelle*, 661 F.2d 904, 906 (5th Cir. 1981) (a later panel of the Fifth
Circuit cannot overrule an earlier panel's decision).

[26]  On January 28, 2019, OLHS-NL sent a letter to Daggs informing her that her FMLA coverage
"had ended."

246 F.3d 344, 354 (5th Cir. 2001) (a Title VII claim).  Furthermore, a fifteen-day lapse and a two-and-one-half month lapse may create an inference of a causal connection.  *See Ware v. CLECO Power LLC*, 90 Fed. Appx. 705, 708 (5th Cir. 2004); *Richard v. Cingular Wireless LLC*, 233 Fed. Appx. 334, 338 (5th Cir. 2007).

In short, plaintiff's complaint sets forth a plausible claim for FMLA retaliation.

c) <u>Racial Discrimination and Retaliation under Title VII/LEDL</u>[27]

Pursuant to Title VII, an employer is unable  "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, **conditions**, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1) (emphasis added).   A Title VII plaintiff "can only prove disparate treatment by presenting evidence that [s]he was treated less favorably than others *outside of h[er] protected class*."  *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017).

Here, plaintiff alleged that she was a member of a protected class, African-American, and that she was treated less favorably than others outside of her protected class, Caucasians.  Specifically, plaintiff asserted that 95 percent of assaults in the Psych Unit were inflicted against African-Americans, but OLHS-NL apparently took no action.  However, less than one week after four Caucasians were "hit," OLHS-NL took prompt remedial action by restarting Ativan to the patients.[28]  OLHS-NL's disparate treatment of the races plausibly influenced plaintiff's ability

---

[27] The same analysis applies to plaintiff's claims under both Title VII and the LEDL.  *Labit, supra*.

[28] It is not necessary to name the comparator at the pleading stage.  *Johnson v. Berry Plastics Corp.*, No. 15-1078, 2015 WL 5568067, at *3 (W.D. La. Aug. 28, 2015), *R&R adopted,* 2015 WL 5599001 (W.D. La. Sept. 22, 2015).

and willingness to return to work following her convalescence.  Accordingly, the court finds that plaintiff states a plausible claim for race-based disparate treatment that materially affected her working conditions.

A prima facie case of retaliation under Title VII contemplates three elements:  "(1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action."  *Anthony v. Donahoe*, 460 Fed. Appx. 399, 404 (5th Cir. 2012) (citation omitted).

Daggs alleged that on March 8, 2019, she notified OLHS-NL that she was filing an EEOC complaint for wrongful termination, etc.[29]  On that same day, Marion Ansardi, the executive director of the Louisiana Board of Practical Nursing Examiners, composed a letter to plaintiff advising her that her nursing license was summarily suspended effective March 8, 2019, because of the November 10, 2018, incident.  Of course, a negative employment reference may constitute an adverse employment action.  *Teague v. Williamson Cty.*, No. 18-1098, 2020 WL 2542869, at *13 (W.D. Tex. May 19, 2020) (citations omitted).  Furthermore, the fact that plaintiff's nursing license was suspended on the same day that she notified OLHS-NL that she was filing an EEOC complaint against it, supports the reasonable inference that OLHS-NL was the moving force behind her suspension, as required to support a causal link between the occurrences.  Accordingly, at this point, plaintiff's complaint suffices to state a plausible claim for retaliation under Title VII and the LEDL.

Relying upon judicial experience and common sense, the court finds that plaintiff's complaint, as amended, states plausible claims for relief under the ADA, the FMLA, Title VII,

---

[29] Filing an EEOC charge is clearly a protected activity.  *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 Fed. Appx. 437, 442 (5th Cir.2007).

and the parallel provisions of the LEDL sufficient to afford defendant fair notice of the claim(s) against it, along with the reasonable *expectation* that discovery will reveal relevant evidence for each of the elements of the claim.  *Twombly, supra*.  Indeed, in the end, plaintiff's allegations are no less fact-intensive or detailed than those set forth in *Wooten v. McDonald Transit Associates, Inc.*, which the Fifth Circuit found sufficient to satisfy Rule 8's low threshold.  *Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).[30]  *Wooten* compels the same outcome here.

## Motion for More Definite Statement

Defendant alternatively contends that the court should order plaintiff to amend her complaint to provide a more definite statement.  Federal Rule of Civil Procedure 12(e) provides, in relevant part, that

> [a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired . . .

Fed.R.Civ.P. 12(e).

Rule 12(e) is not intended to be used as a vehicle for discovery or to frustrate Rule 8(a)(2)'s minimal pleading requirements by compelling plaintiff to amend her complaint when it otherwise suffices to withstand a motion to dismiss.  *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959).  Furthermore, "the class of pleadings that are appropriate subjects for a

---

[30]  In *Wooten*, an ADEA case, plaintiff alleged that he had been employed by defendant for approximately twelve years; that one year before he was fired, he filed a charge with the EEOC; thereafter, his employer "discriminated and retaliated against [him], and created a hostile work environment, until such time that [he] was constructively discharged . . ."; and that he suffered resulting harm.  *Wooten*, 788 F.3d at 498.

motion under Rule 12(e) is quite small – the pleading . . . must be so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Texaco, Inc. v. Louisiana Land & Expl. Co.*, 113 B.R. 924, 940-41 (M.D. La.1990) (citation omitted).

In this case, defendant filed a Rule 12(b)(6) motion that managed to address at least some of plaintiff's claims. Furthermore, while daunting and tedious, the court was able to weed through the lengthy complaint to cull relevant facts and associated theories of recovery. Certainly, all agree (including plaintiff) that her complaint could have been more streamlined and less confusing. Nonetheless, the court is not persuaded that further amendment, which likely would provoke another Rule 12(b)(6) motion, is the most efficient course of action at this point. Indeed, the court is not confident that plaintiff could further refine her claims in any meaningful way. In the absence of same, the court has construed plaintiff's complaint for her, and provided some guidance for defendant. If it turns out that the undersigned was incorrect, then the parties may point out any error in their objections to the District Court.

Furthermore, if the District Court ultimately adopts the instant report and recommendation, then defendant's task in filing an answer to the lengthy complaint will be facilitated by the dismissal of certain claims and the refocusing of plaintiff's cause of action. As the Fifth Circuit stated in *Mitchell, supra*, "we find no statement or testimony . . . to indicate why the defendants, from their knowledge of their own records . . . as well as their operations, would be unable to either admit or deny the allegations concerning . . . violations." The same reasoning applies here.

31

**Conclusion**

For the foregoing reasons,

IT IS RECOMMENDED that defendant Ochsner LSU Health System of North Louisiana's motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 5] be DENIED-IN-PART, as to plaintiff's claims for disability discrimination under Title I of the ADA, for interference and retaliation under the FMLA, and for discrimination and retaliation under Title VII, together with her parallel remedies under the LEDL.

IT IS FURTHER RECOMMENDED that defendant Ochsner LSU Health System of North Louisiana's motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 5] be GRANTED-IN-PART, DISMISSING: 1) WITHOUT PREJUDICE, plaintiff's claims against defendant that fall within the exclusive jurisdiction of the workers' compensation act; and 2) WITH PREJUDICE any remaining claim not specifically excepted above.

IT IS FURTHER RECOMMENDED that defendant Ochsner LSU Health System of North Louisiana's alternative motion for more definite statement [doc. # 5] be DENIED.[31]

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific,

---

[31] To the extent that the undersigned has expanded upon the grounds for dismissal urged by movants, the instant report and recommendation provides adequate notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties). In any event, the court possesses the inherent authority to dismiss a party sua sponte. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 1995 WL 534901 (5th Cir. 1995) (unpubl.) (the district court sua sponte dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer).

written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 19th day of February 2021.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

33